NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JUSTIN FREID, on behalf of himself and all others similarly situated, | : : : | Civil Action No. 10-2870 (SRC) |
| Plaintiff, | : : | **OPINION** |
| v. | : : | |
| NATIONAL ACTION FINANCIAL SERVICES, INC., | : : : | |
| Defendant. | : : | |

**CHESLER**, District Judge

    This matter comes before the Court on the motion for class certification filed by Plaintiff Justin Freid.  Plaintiff seeks certification pursuant to Federal Rule of Civil Procedure 23(b)(3).  The Court has considered the papers filed by the parties and has opted to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78.  For the reasons discussed below, the Court will deny the motion.

**I.**    **BACKGROUND**

    Plaintiffs filed this putative class action suit on or about June 4, 2010.  The Complaint alleges claims for violation of the Fair Debt Collection Practices Act ("FDCPA.")  The Complaint alleges that Plaintiff is a consumer and that Defendant National Action Financial Services, Inc. ("NAFS") is a debt collecting company.  The Complaint asserts five claims regarding FDCPA violations: 1) Defendant's employees failed to adequately disclose their identity when placing telephone calls to Plaintiff; 2) Defendant's employees used deceptive means by conveying a false sense of urgency in voicemail messages; 3) Defendant's employees

failed to adequately disclose their identity in voicemail messages left for Plaintiff; 4) Defendant's employees used unfair or unconscionable means in leaving ominous voicemail messages; and 5) Defendant's employees engaged in written and oral communication with third parties without prior consent of the consumer. Plaintiff now moves for class certification, pursuant to Federal Rule of Civil Procedure 23(b)(3), and appointment of class counsel.

**II.    STANDARD FOR CERTIFICATION UNDER RULE 23(B)(3)**

To obtain certification, Plaintiffs must demonstrate that each of the putative subclasses meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories under which they wish to proceed as a class. In re Prudential Ins. Co. of Am. Sales Practices Litig. Agent Actions, 148 F.3d 283, 308-09 (3d Cir. 1998). In moving for class certification, a movant has the burden of proving that all requirements of Rule 23 are met. General Telephone Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982). In this case, Plaintiffs have sought certification of three subclasses under Rule 23(b)(3), which permits certification when "questions of law or fact common to class members predominate over any questions affecting only individual members" and when "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). The Third Circuit recently reiterated the well-established standard for certification, holding as follows:

> Every putative class must satisfy the four requirements of Rule 23(a): (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy). Fed.R.Civ.P. 23(a)(1)-(4). If those requirements are met, a district court must then find that the class fits within one of the three categories of class actions in Rule 23(b).

Drennan v. PNC Bank, NA (In re Comty. Bank of N. Va. & Guaranty Nat'l Bank of Tallahassee Second Mortg. Loan Litig.), 622 F.3d 275 (3d Cir. Pa. 2010).

In Drennan, the Third Circuit proceeded to specify that when certification under Rule 23(b)(3) was sought, the district court could not certify a class unless two additional requirements had been met: "(i) common questions of law or fact predominate (predominance), and (ii) the class action is the superior method for adjudication (superiority)." Id.  Predominance is similar to Rule 23(a)(2)'s requirement of commonality in that both are concerned with ensuring that the putative class presents common questions of law of fact.  Indeed, where Rule 23(b)(3) certification is sought, the commonality inquiry is subsumed into the predominance analysis. Danvers Motor Co. v. Ford Motor Co., 543 F.3d 141, 148 (3d Cir. 2008).  Predominance, however, imposes a "far more demanding standard," as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." In re Ins. Brokerage Antitrust Litig., 579 F.3d 241, 266 (3d Cir. 2009) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 (1997)).  The Third Circuit has emphasized the stringent nature of the predominance requirement, explaining that it may be satisfied only when "common issues predominate over issues affecting only individual class members." Id. (quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 527-28 (3d Cir. 2004)).  Rule 23(b)(3)'s superiority requirement focuses the Court on manageability concerns.  It must consider whether a trial of the claims by representation would pose difficulties such that some other method of adjudication would be superior to class certification. In re Cmty. Bank of N. Va., 418 F.3d 277, 309 (3d Cir. 2005).  The rule lists four factors relevant to a court's evaluation of predominance and superiority.  They are:

>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3). This list is not exhaustive, and courts may consider other pertinent factors in deciding whether a case is suited to class certification. Amchem, 521 U.S. at 615-16.

A court cannot satisfy itself that a class meets Rule 23's standard in some abstract, theoretical way; instead, it must conduct a rigorous analysis based on the elements of the claim or claims a named plaintiff seeks to pursue in a representative capacity on behalf of the putative class. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d Cir. 2009). "A class certification decision requires a thorough examination of the factual and legal allegations." Id. (quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir. 2001)). The Rule 23 analysis indeed "may include a preliminary inquiry into the merits" insofar as the merits of the claim may be relevant to the class certification analysis. Hohider v. United Parcel Svc., Inc., 574 F.3d 169, 176 (3d Cir. 2009); Hydrogen Peroxide, 552 F.3d at 307. If the Court finds that the action, or any portion thereof, warrants class certification, its order must "define the class and the class claims, issues, or defenses . . ." Fed.R.Civ.P. 23(c)(1)(B); see also Wachtel v. Guardian Life Ins. Co. of Am., 453 F.3d 179, 184 (3d Cir. 2006) (holding that the rule "requires district courts to include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment.")

**III.     THE CLASS CERTIFICATION MOTION**

Plaintiff seeks certification of three subclasses: 1) recipients of voicemail messages conveying a false sense of urgency; 2) persons who were the subject of written communications sent to third parties without the alleged debtor's consent ("the unauthorized written communication class"); and 3) persons who were the subject of voicemail messages left for third parties without the alleged debtor's consent ("the unauthorized oral communication class.")

A.     <u>The false sense of urgency subclass</u>

Plaintiff moves for certification of the subclass of recipients of voicemail messages conveying a false sense of urgency. This relates to Count II of the Complaint, which asserts a claim for violation of 15 U.S.C. § 1692e(10), which bars "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." Plaintiff contends that class treatment is appropriate for this claim because NAFS directs its collectors to use scripts when leaving voicemail messages. Plaintiff points to the scripts contained in a document titled "Talk-Off 1 Script." (Bennecoff Aff. Ex. E.) The document contains six scripts for leaving telephone messages. (<u>Id.</u> at 9, 10.) Three of the scripts contain the phrase, "I need you to return my call today. . ." (<u>Id.</u> at 9.) The other scripts contain these phrases: "Since I cannot make any decisions without you, I need to speak to you by the end of business today;" "I need to review the details with you today;" and "Please call me today for further information." (<u>Id.</u> at 10.)

In deciding the motion to certify this class, this Court must consider how these issues would be tried. The Third Circuit has held:

Because the decision whether to certify a class requires a thorough examination of

5

>  the factual and legal allegations, the court's rigorous analysis may include a preliminary inquiry into the merits, and the court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.

Hydrogen Peroxide, 552 F.3d at 317.

In order to envision the form that a trial on the false sense of urgency claim would take, this Court looks to the cases cited by Plaintiff.[1]  The most helpful case is Leyse v. Corporate Collection Servs., 2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. Sept. 18, 2006).  Leyse concerned a putative class action suit by a consumer against a debt collector, and one claim alleged that the debt collector's voicemail messages violated § 1692e(10) because they deceptively conveyed a false sense of urgency.  Id. at *1, *19.  The Court examined the claim under the Second Circuit's "least sophisticated consumer" test for violation of § 1692e(10).  Id. at *19.  The Third Circuit applies this test as well.  Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006).

The Leyse Court began by citing the Federal Trade Commission staff commentary on § 1692e(10).  2006 U.S. Dist. LEXIS 67719 at *19.  The FTC staff opined:

>  A debt collector may not communicate by a format or envelope that misrepresents the nature, purpose, or urgency of the message.  It is a violation to send any communication that conveys to the consumer a false sense of urgency.

53 F.R. 50097.  Plaintiff alleged that three pre-recorded messages violated 1692e(10) by communicating a false sense of urgency.  On cross-motions for summary judgment, the Leyse Court inquired into the deceptiveness of the pre-recorded messages, and ruled as a matter of law. 2006 U.S. Dist. LEXIS 67719 at *19-*21.  The Court found that one message was not deceptive

---

[1] Plaintiff's moving brief cites no false sense of urgency cases.  The Complaint, however, cites two: Leyse, and Romine v. Diversified Collection Servs., 155 F.3d 1142, 1149 (9th Cir. 1998).  Romine involved the use of telegrams to convey a sense of urgency and is inapposite.  Id.

and two were deceptive. Id. at *20-*21.

Significantly, Leyse concerned pre-recorded messages. The evidence submitted enabled the Court to have a high degree of certainty as to the exact actual communication to the consumer. This is not the case here. In the instant case, the Complaint provides a transcription of three messages alleged to have been left by NAFS employees on Plaintiff's answering machine.[2] (Compl. ¶¶ 14, 15, 19.) Plaintiff has not asserted that other potential plaintiffs have transcriptions of telephone messages available, nor does Plaintiff rely in this motion on the evidence provided by the transcriptions.

Instead, in arguing that this subclass shares common factual issues, Plaintiff points to the six alternative scripts for telephone messages that NAFS is alleged to have provided to its employees to use – not the actual messages. At trial, Plaintiff will need to prove that an actual communication violated the FDCPA. The six scripts may serve as circumstantial evidence of the actual communication, but there are significant problems that are likely to accompany the use of this evidence.

First, there are six different scripts, and the differences among them precludes treating the group of them as a single, unitary practice. While three of the scripts contain the phrase, "I need you to return my call today," and so might conceivably be grouped together, the other scripts

---

[2] This Court observes that, while Plaintiff emphasizes the importance of the six telephone message scripts that NAFS employees are alleged to have been given, not one of the three transcribed messages fits any one of those scripts. This supports the conclusion that, as will be discussed at length *infra*, the scripts themselves are very weak evidence of the actual communications made.

contain very different phrases.[3]  Thus, from the outset, even if it is proven that all employees were given the set of six scripts, different employees using different scripts are quite likely to generate messages that differ in the words used to generate a sense of urgency.

  The use of the scripts at trial is likely to be problematic.  The finder of fact will be tasked with deciding whether the actual communication received by the consumer was deceptive.  Presented with a group of scripts which use the phrases, "I need you to return my call today," "Since I cannot make any decisions without you, I need to speak to you by the end of business today" or "I need to review the details with you today," the finder of fact is likely to be uncertain about what message was actually left.[4]  Ascertaining the characteristics of the actual communication would appear to be a very individualized inquiry.  Even if a plaintiff could establish which script was used, this is still weak circumstantial evidence of what was actually said in the message, and how it was said.

  Additionally, the scripts are problematic because the words of the scripts in and of themselves do not appear to be deceptive.  Were a debt collector to state in a message, "I need you to return my call today," this appears quite possibly to be truthful.  Many employees need to produce results while working, and it seems entirely possible that the employees of a large debt

---

[3] One of the scripts uses the phrase, "Please call me today for further information."  As a matter of law, it appears unlikely that "Please call me today for further information" qualifies as a deceptive communication under § 1692e(10).

[4] Plaintiff himself demonstrates this problem: as already noted, the transcribed messages included in the Complaint do not fit any of the six scripts.  At trial, were Defendant to point to this fact, it might persuade the finder of fact to doubt the evidentiary value of the scripts.  Furthermore, even if there does exist a class of plaintiffs who received messages that fit the scripts, this Plaintiff does not appear to be typical of that class – another problem under Rule 23(a)(3).

collector do, in fact, need to have debtors return messages in order to demonstrate to their employer that they are working effectively. Thus, the scripts alone do very little to prove the false sense of urgency claim.

The matter at issue here is the "sense of urgency." The assessment of whether a communication conveys a sense of urgency is likely to involve judgments of subtleties such as nuances of tone and phrasing. In Leyse, the Court could directly observe the actual tone and phrasing of each pre-recorded message.[5] Not so in the instant case. Here, the evidence as to the message actually received by a particular consumer is likely to be quite varied. Some consumers may have preserved the actual messages received, and this Court will be able to assess the deceptiveness of such messages with far greater ease. Other consumers may not have preserved a recording of the message, and then the Court will need to hear testimony to establish the nature of the communication.

The common issue of fact shared by the proposed plaintiff subclass is that NAFS gives its employees six scripts to use when leaving messages. This common fact appears to be of very limited usefulness to a putative class member trying to prove his or her case. The question of what was actually communicated appears to be a highly individualized matter. Plaintiff's false sense of urgency claim is poorly suited to class treatment. There are key factual matters which, on this record, do not appear to be common to a large number of plaintiffs.

The instant case is less akin to Leyse and is much more like Reese v. Arrow Fin. Servs.,

---

[5] Furthermore, the Leyse Court relied on the evidence of how the words were delivered, noting that "the caller's voice stutters briefly, as if he is pressed and attending to an especially troubling matter." Id. at *21. In the instant case, there is no common evidence as to the vocal characteristics of the messages as delivered.

LLC, 202 F.R.D. 83, 93 (D. Conn. 2001), which concerned a motion for certification of a class of plaintiffs who had received communications from a debt collector in violation of the FDCPA. The <u>Reese</u> Court denied the motion for class certification for lack of commonality:

> [L]iability necessarily turns on particularized issues as to what representations were made by defendant to each class member. . . [P]laintiff's allegations are insufficiently specific to permit the conclusion that defendant acted with a single, unitary course of conduct to meet the commonality requirement. Although plaintiff alleges that defendant had a "policy and practice" of purchasing charged-off debts and intentionally deceiving consumers into making payment on such debts by not disclosing information about the effects of making payment on a time-barred debt, plaintiff does not describe the means by which such a practice was carried out. If plaintiff can show that a common or similar letter was sent to each class member, or another similar single course of conduct, then commonality might be established. If, in contrast, the various proposed class members received different communications from defendant regarding their time-barred debt, the individualized assessment required to determine liability under the FDCPA would counsel against certifying either class one or three.

<u>Id.</u> Such is the situation in the instant case. Liability in this case will turn on particularized issues as to the communication made by Defendant to each class member.

Plaintiff has not persuaded this Court that NAFS acted with a single, unitary course of conduct. The message scripts offered suggest at best that there may be some similarity among all messages left for class members, but not enough similarity to support concluding that Defendant engaged in a single course of conduct. Rather, it appears that, as in <u>Reese</u>, Plaintiff has failed to demonstrate that Defendant engaged in a course of conduct common to the proposed class members. As in <u>Reese</u>, determining the deceptiveness of the actual communications will require an individualized assessment to determine liability under the FDCPA that counsels against certifying the proposed class.

To certify a class under Federal Rule of Civil Procedure 23(b)(3), the Court must find

"that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." As to these matters, generally termed the predominance requirement, the Third Circuit has stated:

> Predominance tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation, a standard far more demanding than the commonality requirement of Rule 23(a), requiring more than a common claim. Issues common to the class must predominate over individual issues. Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case. If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.

Hydrogen Peroxide, 552 F.3d at 310-311 (citations omitted). This Court has performed the required analysis and formulated a prediction as to how the specific issue of deception by conveying a false sense of urgency will play out at trial. This Court predicts that proof of an essential element of that cause of action will require individual treatment. Pursuant to Hydrogen Peroxide, class certification is unsuitable.

    B.    <u>The communications to third parties subclasses</u>

Two of the proposed subclasses involve persons who did not consent to communications made to third parties. Defendant challenges the motion for certification of these subclasses on typicality and numerosity grounds.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Complaint alleges that Defendant made unauthorized communications to Plaintiff's father (a fax of a document) and grandmother (a voicemail

11

message.)  Defendant contends that Plaintiff lacks one of the defining characteristics of the written communication subclass and thus is not typical: he consented to the challenged communication to his father.  Plaintiff's reply does not dispute this contention, but merely attempts to minimize its significance.  Plaintiff cites the correct Third Circuit standard: "A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation."  Beck v. Maximus, Inc., 457 F.3d 291, 301 (3d Cir. 2006).  The defense that Plaintiff consented to the written communication with his father seems likely to be a major focus of the litigation over his claim of unauthorized written communication.  Because Plaintiff has defined the subclass in such a way that the defense of consent cannot be typical of the class, it must be unique.  Pursuant to Beck, this Court agrees with Defendant that the issue of Plaintiff's consent to the written communication with his father precludes him from being typical of the class of people who did not consent to written communications.  As to the unauthorized written communication subclass, the typicality requirement has not been met.

     Rule 23(a)(1) requires that the proposed class be so numerous that joinder is impracticable.  Fed.R.Civ.P. 23(a)(1).  Though the rules of civil procedure set no bright line denoting sufficient numerosity, the Third Circuit has held that "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001).

     Plaintiff has failed to make a sufficient demonstration that the numerosity requirement is met for the two unauthorized communication subclasses.  As to the unauthorized written communication class, Plaintiff offers nothing from which this Court could infer that Defendant

ever contacted a third party in writing during a collection process without consent. As discussed, Plaintiff does not dispute Defendant's contention that he consented to the written communication with his father. Plaintiff has not shown the Court anything from which it could infer that there is even one member of this subclass. The numerosity requirement has not been met and, as to this subclass, the motion for class certification will be denied.

As to the unauthorized oral communication subclass, Plaintiff's numerosity argument appears to be: 1) Defendant admits it has made millions of telephone calls to locate debtors; 2) company policy requires that voicemail messages must include the statement that the call is from a debt collector; and 3) therefore, Defendant must have left unauthorized voicemail messages in some significant number of cases. This argument suffers from an obvious flaw: it does not even address one key aspect of the subclass definition, that the telephone calls to the third parties are unauthorized by the alleged debtor. Plaintiff has made no demonstration that, aside from Plaintiff, Defendant has ever left an unauthorized voicemail message for any third party in a collection process. The numerosity requirement has not been met and, as to this subclass, the motion for class certification will be denied.

## IV. CONCLUSION

For the reasons set forth above, this Court finds that Plaintiff has failed to demonstrate that the three proposed subclasses meet the requirements for class certification under Rule 23. The motion for class certification is denied.

                                          s/Stanley R. Chesler
                                        STANLEY R. CHESLER
                                        United States District Judge

DATED: April 20, 2011