**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

NOT FOR PUBLICATION

| | | |
|---|---|---|
| JUSTIN FREID | : | |
| | : | |
| | : | Civil Action No. 10-2870 (ES)(CLW) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL ACTION FINANCIAL | : | |
| SERVICES, INC., | : | |
| | : | |
| Defendant. | : | |

**SALAS, United States District Judge**

Pending before this Court is plaintiff Justin Freid's ("Plaintiff") motion for attorneys' fees

and costs ("Attorney Fees Motion"). (Dkt. No. 38). Counsel for Plaintiff Kimmel & Silverman P.C.

and Weisberg and Meyers, LLC seek fees totaling $97,028.59. Defendant National Action Financial

Services, Inc. opposes the Attorney Fees Motion. No oral argument was heard. FED. R. CIV. P. 78.

For the reasons given below, Plaintiff's Attorney Fees Motion is GRANTED in part and DENIED

in part.

**I.      BACKGROUND**

On several occasions from March 19, 2010 through March 29, 2010, defendant bill collector

National Action Financial Services, Inc. ("NAFS") contacted Plaintiff Justin Freid demanding

payment of a debt allegedly owed to Chase Bank. Contending that these actions constituted unfair

debt collection practices in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15

U.S.C. § 1692 et seq., Plaintiff filed a federal class action complaint on June 4, 2010 ("Class Action

Complaint").  (Dkt. No. 1).  The Class Action Complaint sought statutory damages on behalf of

himself and a putative nationwide class.

On August 18, 2010, counsel for Defendant provided counsel for Plaintiff with an offer of

settlement for $1,001.00 plus reasonable attorney's fees and costs regarding the claims set forth in

the Class Action Complaint.  (Dkt. No. 41, Ex. A).  On August 24, 2010, Plaintiff rejected this offer.

(Dkt. No. 41, Ex. C).  Defendant then filed an answer ("Answer") to Plaintiff's Class Action

Complaint.  (Dkt. No. 8).

On February 21, 2011, Plaintiff filed a motion for class certification and appointment of class

counsel before the Honorable Stanley R. Chesler, United States District Judge ("Class Certification

Motion").  (Dkt. No. 23).  After considering the Class Certification Motion, on April 20, 2011, Judge

Chesler issued an Order denying the motion.  (Dkt. No. 35).  In so ordering, Judge Chesler found that

Plaintiff had failed to meet the numerosity or commonality requirements needed to certify the class

under FED. R. CIV. P. 23(a) and FED. R. CIV. P. 23(b)(3).  (Dkt. No. 34).

Promptly thereafter, on May 11, 2011, Defendant again submitted an offer of judgment to

Plaintiff.  On May 25, 2011, Plaintiff accepted this offer.  (Dkt. No. 36, Ex. A).  The formal Offer

of Judgment stated:

> $1,001.00 plus reasonable attorney's fees and costs ... [and] "[i]n the event that the
> parties are unable to agree on the reasonable costs and attorneys' fees, NAFS reserves
> the right to contest fees incurred by Plaintiff after Plaintiff rejected the offer of
> settlement on August 24, 2010 (as well as fees and costs incurred prior to August 24,
> 2010 to the extent they are not reasonable)."

Id.

The parties were unable to agree as to a reasonable amount.  On May 26, 2011, Plaintiff filed

the present motion for attorney's fees and costs in the amount of $97,028.59 seeking the Court's

intervention in determining a reasonable figure owing Plaintiff's counsel, along with a supporting

brief ("Attorney's Fees Motion", "Pl.'s Br.").  (Dkt. No. 38).  On June 20, 2011, Defendant's filed

opposition (Dkt. No. 41, "Def.'s Br.") and on July 6, 2011, Plaintiff filed its reply brief (Dkt. No.

45, "Pl.'s Reply Br.").  Having reviewed the above, the Court is prepared to rule.

## II.       DISCUSSION

### A. Legal Standard

The FDCPA provides that "in [any] case of any successful action," a prevailing party may

recover, "the costs of the action, together with a reasonable attorney's fee as determined by the

court."  15 U.S.C. § 1692k(a)(3).  The award of attorney's fees is "mandate[d] . . . as a means of

fulfilling Congress's intent that the [FDCPA] should be enforced by debtors acting as private

attorneys general."  Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991).

The plaintiff's success requires that it be a "prevailing party" to recover attorney's fees under

§ 1692k.  "Prevailing party" has been defined in various ways.  The Court finds the formulation set

forth by the United States Supreme Court in Hensley v. Eckerhart, 461 U.S. 424 (1983) instructive.

In Hensley, the Supreme Court found "that plaintiffs may be considered 'prevailing parties' for

attorney's fees purposes if they succeed on any significant issue in litigation which achieves some

of the benefit the parties sought in bringing suit."  Id. at 433.  This District has adopted the Hensley

definition of "prevailing party" in assessing FDCPA claims.  See Norton v. Wilshire Credit Corp.,

36 F.Supp.2d 216, 218-19 (D.N.J. 1999).[1]

To determine the amount of reasonable attorney's fees, the Court is guided by the well-known "lodestar" method.  This method requires multiplying the hours reasonably expended by a reasonable hourly rate.  See Blum v. Stenson, 465 U.S. 886, 888 (1984).  The prevailing party bears the burden of proving, through competent evidence, the reasonableness of the hours worked and rates claimed.  Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996).  Any party may oppose a fee application by objecting with "sufficient specificity."  Smith v. Phila. Hous. Auth., 107 F.3d 223, 225 (3d Cir. 1997).  Once opposed, "the party requesting fees must demonstrate to the satisfaction of the court that its fee request is reasonable."  Interfaith Cmty. Org. v. Honeywell Intern, Inc., 426 F.3d 694, 703 (3d Cir. 2005).

While the lodestar amount is presumed to be reasonable, a court may downwardly adjust the amount based on the relative success of the plaintiff's claims.  Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).  "[T]he court can reduce the hours claimed by the number of hours 'spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed.'"  Id. (citing Institutionalized Juveniles v. Secretary of Pub. Welfare, 758 F.2d 897, 919 (quoting Hensley 461 U.S. at 440).  This adjustment should be taken independently of the other adjustments and should be the first adjustment applied to the lodestar.

---

[1] The Court notes that the Hensley decision discussed attorney's fees in the context of 42 U.S.C. § 1988.  However, the same standards "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.'"  Norton v. Wilshire Credit Corp., 36 F.Supp.2d at 219, n. 2, 36 F.Supp.2d 216 (quoting Hensley. 461 U.S. at 433).

-4-

Id.  The Supreme Court in Hensley set forth two methods by which a District Court may reduce

attorney's fees awards.  The District Court may attempt to identify specific hours that should be

eliminated.  Alternatively, the District Court may simply reduce the award to account for the limited

success.  Hensley, 461 U.S. at 436-37.  Other factors to consider in adjusting the lodestar amount

include: (1) the time spent and labor required; (2) the novelty and difficulty of the legal issues; (3)

the customary fee in the community; (4) the nature and length of the professional relationship with

the client; and (5) awards in similar cases.  See Public Interest Research Group of N.J., Inc. v.

Windall, 51 F.3d 1179, 1185, n. 8 (3d Cir. 1995) (citing Johnson v. Ga. Highway Express, Inc., 488

F.2d 714 (5th Cir. 1974)).  In assessing whether a lodestar adjustment is appropriate, the court

necessarily retains a great deal of discretion in deciding what is reasonable.  Bell v. United Princeton

Properties, 884 F.2d 713, 721 (3d Cir. 1989).

Prevailing parties may also collect reasonable attorney's fees for the time spent preparing the

fee petition.  Norton, 36 F.Supp.2d at 219; Prandini v. National Tea Co., 585 F.2d 47 (3d Cir. 1978)

(establishing that in a case involving a statutory fee award, fees incurred in litigating the fee petition

are compensable).  These fees may also be reduced to reflect the partial success of the petition.  See

Institutionalized Juveniles, 758 F.2d at 924.

B.  Analysis

As a threshold matter, the parties do not dispute that Plaintiff is a prevailing party within the

meaning of the FDCPA.  Mr. Freid received an offer of settlement greater than the maximum

statutory award and thus succeeded on a "significant issue in litigation."  Hensley, 461 U.S. at 433.

The Court's analysis will therefore be limited to the amount of fees recoverable by Plaintiff's counsel Kimmel & Silverman ("K&M") and Weisberg and Meyers ("W&M"), respectively.

Plaintiff seeks $97,028.59 in attorney's fees and costs. Defendant objects to the amount of fees sought. Defendant contends that Plaintiff is not entitled to any fees or costs incurred after August 24, 2010, the date Plaintiff rejected the initial offer of judgment. After this date, Defendant argues that counsel's time was spent working toward the ultimately unsuccessful Class Certification Motion and is thus not recoverable.

I.      Unsuccessful Claims

In assessing the lodestar amount, the Court will first address and adjust the lodestar in light of the limited success of the claims; specifically, Judge Chesler's denial of Plaintiff's Class Certification Motion. See Rode 892 F.2d at 1183 (holding that unsuccessful claim adjustment should be addressed first and independently from other appropriate adjustments). Both K & S and W & M seek fees for time spent litigating the Class Certification Motion. Defendant contests the reasonableness of all counsel fees incurred for the period after the August 24, 2010 rejection of the initial offer on the basis that the class claims were unsuccessful. (Def.'s Br. at 6-12). As noted above, a court may downwardly adjust the lodestar amount when a plaintiff enjoys only limited success. See Norton v. Wilshire Credit Corp., 36 F. Supp.2d 216, 221 ("lodestar will be reduced to account for the time spent litigating unsuccessful claims."); Rode, 892 F.2d at 1183.

In this case, both K&S and W&M ought not to recover all fees they request because Plaintiff did not prevail on a large and distinct aspect of the case.[2] However, the Court finds that K&S and

---

2

The Court acknowledges and accepts Plaintiff's argument that this Circuit has shown an unwillingness to allow defendants to use Rule 68 to cap attorney's fees at a specific date. See Weiss v. Regal Collections, 385 F.3d 337, 339 (3d Cir. 2003); Smith v. NCO Financial Systems, Inc., 257 F.R.D. 429. However, reducing the lodestar as NAFS

W&M's roles in litigating the individual action and the class action differ.  Accordingly, the Court will discuss the reasonableness of each firm's fees separately.

A.      W & M

The Court finds that W & M's primary role in this litigation was to pursue the unsuccessful class action claim.  To that end, the Court relies on the pro hac vice application of lead W & M attorney Aaron D. Radbil whose billable hours in this matter total $20,222.50.  (Dkt. No. 4).  Amy Bennecoff, K & S counsel, issued the following certification on Mr. Radbil's behalf: "I have known Aaron D. Radbil for several months during which my supervisor Craig Kimmel and I have worked with Mr. Radbil and his firm, successfully prosecuting *consumer class action claims*." Id. (emphasis added).  This certification is particularly telling when contrasted with that of Mr. Craig Kimmel, lead counsel for K & S.  Ms. Bennecoff's certification on behalf of Mr. Kimmel simply states that Ms. Bennecoff has worked with Mr. Kimmel for several years but makes no mention of his particular expertise or experience litigating consumer class action claims.  (Dkt. No. 3).  This distinction, as well as the record before the Court, illustrates that W&M's primary purpose was to litigate the class claim on behalf of the Plaintiff.  Because W&M was retained to pursue the class certification and class action claim and said efforts were unsuccessful, the Court will not award the attorney's fees W & M requests.  See Hensley, 461 U.S. at 440.  See also Norton v. Wilshire Credit Corp., 36 F. Supp.2d 216, 221 ("the lodestar will be reduced to account for the time spent litigating unsuccessful claims"); Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir. 1990).

---

suggests is not inconsistent with the policies underlying the FDCPA.  Here, a specific date is **not** being imposed to moot a plaintiff's class action claims or otherwise undermine a plaintiff's efforts to certify a class.  Instead, the reason that the Court reduces the lodestar is because the class action certification efforts were **entirely** unsuccessful.

used for analysis

W & M argues that the intertwining of the facts and law in both the individual and class action claims make a downward adjustment of the lodestar inappropriate. (Pl.'s Reply Br. at 3-4). Specifically, Plaintiff's counsel states that both claims were brought under the same legal theories and that "Plaintiff alleged a common core of facts relative to his claims and the putative class members." Id. This Court disagrees. It is precisely because the class lacked both numerosity and commonality that Judge Chesler denied the Class Certification Motion. (Dkt. No. 34 at 9). Specifically, Judge Chesler found that "[t]here [were] key factual matters which, on this record, [did] not appear to be common to a large number of plaintiffs." Id. More specifically, Judge Chesler held:

> The common issue of fact shared by the proposed plaintiff subclass is that NAFS gives its employees six scripts to use when leaving messages. This common fact appears to be of very limited usefulness to a putative class member trying to prove his or her case. The question of what was actually communicated appears to be a highly individualized matter . . . . There are key factual matters which, on this record, do not appear to be common to a large number of plaintiffs.

Id. Lastly, while the Court acknowledges that both the individual claim and the class action claim implicate the FDCPA, the procedural and legal analysis for each claim differs. Class certification efforts are guided by Rule 23 of the Federal Rules of Civil Procedure. FED. R. CIV. P. 23. These efforts operate distinctly from the litigation of the individual claim in that a putative class must first be certified before the merits of the class action claims can be reached. Id. Thus, the individual claim and the class action certification are not sufficiently legally or factually intertwined such that the Court is prohibited from reducing the lodestar amount.[3]

---

[3] Plaintiff relies on Sypniewski v. Warren Hills Reg'l Bd. Of Educ., No. 01-3061, 2006 WL 1675066 (D.N.J, Jun. 14, 2006) and Rode v. Dellarciprete, 892 F.2d 117 (3d Cir. 1985) to support its conclusion that a plaintiff's attorney's fees and costs should not be adjusted where a plaintiff's individual and class claims are legally and factually intertwined. The Court finds that Plaintiff's reliance on both cases is misplaced. First, the relative success of the Plaintiffs in Sypniewki and that of Plaintiff in this case is distinct. In Sypniewski, Plaintiffs filed a class action complaint under 42 U.S.C. § 1983, a fee-shifting statute, requesting that Defendant Warren Hills' dress code policy be deemed unconstitutional. The Sypniewski Plaintiffs were considerably more successful in their litigation. The Honorable Tonianne Bongiovanni found

The Court does not doubt that W & M expended considerable time and effort litigating the Class Certification Motion and the class action more generally.  However, the FDCPA does not allow for the shifting of attorney fees whenever counsel works tirelessly for his or her client.  Instead, counsel must obtain successful results for his or her client.  As the Hensley Court so eloquently stated:

> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  Again, the most critical factor is the degree of success obtained.

Id. at 436.  Accordingly, W & M's request for attorney fees is denied.

B.      K & S

In contrast, the Court recognizes that K & S served dual roles in the litigation, even after Plaintiff's rejection of the initial August 24, 2010 offer, and cannot in good conscience eliminate all K & S billing entries postdating Plaintiff's rejection of the initial offer of judgment.  As noted above, the Court is within its discretion to reduce the lodestar amount to reflect partial success.  Hensley 461 U.S. at 436.  Accordingly, the Court will remove the hours K & S requests that were spent working toward the ultimately unsuccessful class action efforts.

---

that Plaintiffs had obtained relief on significant claims after the Third Circuit issued its favorable ruling.  Sypniewski, 2006 WL 1675066 at *7.  Judge Bongiovanni held that the only claims that were unsuccessful were "the least significant counts."  Moreover, Judge Bongiovanni found that Plaintiffs ultimately prevailed on these claims once the Third Circuit determined that the dress code at issue failed to pass First Amendment muster.  Id.  Second, despite Plaintiff's contentions otherwise, the Rode decision actually **supports** this Court's holding.  To that end, the Third Circuit agreed with the District Court that in assessing reasonableness, hours that were sufficiently separable from the rest of the litigation warranted deduction.  Rode, 892 F.2d at 1185-86.

The Court has undertaken a thorough review of the billing entries attached to K & S's Attorney Fees Motion.  The Court finds that K & S's efforts after the initial offer was rejected were geared primarily toward litigating the ultimately unsuccessful class claim.  However, a multitude of hours were spent working with Mr. Freid personally - informing him of the status of the case, preparing Mr. Freid for deposition, executing confidentiality orders, negotiating the offer of judgment, and the like. See, e.g., Dkt. No. 38, Ex. A (Amy L. Bennecoff – Discuss dep with client beforehand to address final questions (0.4 hours); Email from client confirming time, respond (0.1 hours); Email exchange with AR re: call in number (0.1 hours); Email to client with docs for dep (0.1 hours); Travel to offices of Marshall Dennehey for deposition (0.4 hours); Attend deposition of J. Freid (3.0 hours); Discuss deposition with AR (0.3 hours); Travel time to office in Ambler from Philadelphia (0.8 hours); Email exchange with AR and CTK re: dep of client (1.0 hour); Email from client with questions after dep (0.1 hours); Download dep off webex (0.1 hours); Email correspondence with Justin Freid (.1 hours); Email correspondence to client with status update (.2 hours) (12/29/2010, 2/26/2011, 3/7/2011); (Craig Thor Kimmel - Email from CO with Offer of Judgment; Review OOJ and Correspondence (.2 hours) (4/29/11)); (Christy L. Sunchych - Email client re: deposition preparation (.1 hours) (12/22/2010)).  As such, the Court finds the following post-offer hours are reasonable:

| | |
|---|---|
| Amy L. Bennecoff: | 23.5 hours |
| Craig T. Kimmel: | 6.4 hours |
| Christy L. Sunchych: | 1.5 hours |
| Jeff Ehrman: | 1.0 hour |

The Court's reduction of K & S fees in this manner is not unprecedented.  For example, in an illustrative case from the Northern District of Illinois, a plaintiff who sought attorney's fees under a similar fee-shifting statute – albeit not the FDCPA – requested a 50% reduction of all fees and costs based on the unsuccessful nature of his class claim.  Washington v. Pierce, 576 F. Supp. 473, 474 (N.D. Ill. 1983).  The Washington Court accepted said request.  This Court notes that in the instant matter, K & S has not acknowledged that there ought to be any reduction at all despite the fact that this Court is aware of at least six other FDCPA cases in which fee petitions for K&S were reduced within the last year.  See Levy v. Global Credit and Collection Corp., No. 10-4229, 2011 WL 5117855 at *2 (D.N.J. Oct. 27, 2011) (citing five other cases in which K & S fees were reduced).  This is of no moment.  As the Court has the discretion to adjust the lodestar amount, the Court will follow the lead of its brethren and reduce the hours as described.

II.      Successful Claim

Defendant further contends that even as to the successful individual claim, Plaintiff's counsel's rates are not reasonable.  Specifically, Defendant argues that the hourly rates billed are excessive and that hours spent on intra-office communications, clerical activities and duplicative tasks should be removed.  As such, Defendant offers only $1,447.50.  The Court has already held that W &M is not entitled to any fees as it is not the representative of a "prevailing party" within the meaning of the FDCPA.  Accordingly, the Court will address Defendant's arguments only insofar as they relate to K&S's fees.

A.      Reasonableness of Rates

The reasonableness of Plaintiff's hourly rates is calculated according to the prevailing market rates in the relevant community.  See Blum v. Stenson, 465 U.S. 886, 895, 104 S.Ct. 1541, 79

L.Ed.2d 891 (1984).  The party seeking the fees bears the burden "of producing sufficient evidence

of what constitutes a reasonable market rate for the essential character and complexity of the legal

services rendered in order to make out a prima facie case."  Weed-Schertzer v. Nudelman, No. 10-

6402, 2011 WL 4436553 at *3 (D.N.J. Sept. 23, 2011) (citing Smith v. Philadelphia Hous. Auth.,

107 F.3d 223, 225 (3d Cir. 1997)).  Courts determine reasonable rates by "assessing the experience

and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience, and

reputation."  Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).  This Court is also guided

by the twelve-factor test outlined in Johnson v. Georgia Highway Express, Inc., 488 F.2d 717, 717

(5th Cir. 1974).[4]  See Levy v. Global Credit and Collection Corp., 2011 WL 5117855 (D.N.J. Oct.

27, 2011).  The starting point in any attorney fees analysis is the attorneys' usual rates, "but this is

not dispositive."  Loughner v. Univ. of Pittsburgh, 260 F.3d 173, 180 (3d Cir. 2001) (quoting Public

Int. Research Group of N.J., Inc. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995)).

Plaintiff had three attorneys, three paralegals and two IT personnel billing at the following

rates:  Craig T. Kimmel, Esq. ($425.00 per hour); Amy L. Bennecoff, Esq. ($300.00 per hour); Tara

L. Patterson, Esq. ($300.00 per hour); Christy Sunchych ($165.00 per hour); Katie Hall ($165.00 per

hour); Jason Ryan ($155.00 per hour); Jeff Ehrmann ($150.00 per hour); and Jacob Ginsburg

($200.00 per hour).  Plaintiff relies on its credentials, along with the following three sources, to meet

its burden of demonstrating that the requested rates are reasonable:  (1) the 2007 Consumer Law

---

[4] As noted above, the twelve factors to be considered are as follows: (1) the time and labor required by the matter; (2) the novelty and difficulty of the questions presented; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship; and (12) awards in similar cases. Johnson, 488 F.2d at 717-19.

Attorney Fee Survey; (2) the U.S. Attorney's "Laffey Matrix," and (3) an affidavit of Nicholas Bontrager, an associate attorney at a consumer practice firm in California. (Pl.'s Br. at 23-29).

The Court finds that the Plaintiff's billings should be adjusted. First, Plaintiff's counsel continues to rely on sources that courts in this District have repeatedly declined to adopt. See Weed-Schertzer, 2011 WL 4436553 at *4; Levy, 2011 WL 5117855 at *3. In Weed-Schertzer, Judge Falk found that the 2007 Consumer Law Survey was not indicative of the practice relating to FDCPA cases in New Jersey. Id.; Levy, 2011 WL 5117855 at *3 ("This Court finds it noteworthy that, despite [K&S's] mechanical submission of the Survey to each court that hears its section 1692k(3) petitions, the Survey has not been adopted within the Third Circuit . . . The Court is surprised by [K&S's] persistence in shopping the Survey around to various courts in this region, despite its track record in the Circuit.") (internal citations omitted). As such, this Court will not consider the Consumer Law Survey in assessing reasonableness within the District of New Jersey.

Moreover, the courts in this District have consistently dispelled the relevance of the Laffey Matrix. Id. In Weed-Schertzer, the Court correctly noted that the Laffey Matrix provides billing rates relevant to the Washington D.C. area and is thus not particularly pertinent where the relevant market is the District of New Jersey. Id. Sister courts have also held that the Laffey Matrix is not relevant outside of the Washington D.C. area. See Williams v. NCO Fin. Sys., No. 10-5766, 2011 WL 1791099 (E.D.Pa. May 11, 2011) (finding that the Laffey Matrix was inapplicable in determining the reasonable rates for the Eastern District of Pennsylvania). The Court therefore declines to rely upon the Laffey Matrix to calculate the reasonable fees owed to Plaintiff.

Finally, in support of reasonableness, K&S continues to submit an identical affidavit of consumer protection attorney Nicholas Borntrager despite the fact that this affidavit's reliability has

constantly been called into question.  Like the Courts in Weed-Schertzer and Levy, this Court will

not adopt Mr. Borntrager's recommendation.  "[T]he affidavit submitted by Mr. Borntrager does not

establish that Plaintiff['s] proffered rates are appropriate in New Jersey.  Mr. Borntrager is not

admitted in New Jersey, nor does he profess to represent clients in New Jersey.  He is a fairly recent

(2007) law school graduate with no connection to this forum."  Weed-Schertzer, 2011 WL 4436553

at *4.  Mr. Borntrager's affidavit thus does not establish the connection between the proffered rates

and the relevant market rates in New Jersey.

     In contrast, in accordance with Maldonado, Defendant appropriately compares K & S's rates

to "the rates prevailing in the community" – i.e. the District of New Jersey.  256 F.3d at 184.  To that

end, Defendant submits the certifications of Joseph K. Jones, Esq. and Donald M. Doherty, Esq.

from matters filed in this District.  (Pl.'s Br. at 63-66).  Mr. Jones's declaration was submitted in

Smith v. Lyons, Dougherty & Veldhius, P.C., No. 07-5139 (JHR), a case in which the Court

approved a rate of $325.00 per hour for the lead partner in a class action who had litigated over forty

similar cases in New Jersey.  See also Weed-Schertzer, 2011 WL 4436553 at *5 (D.N.J. Sept. 23,

2011) (approving Defendant's reliance on Mr. Jones's declaration as a basis for lowering the rates

proffered by K&S).  Mr. Doherty's certifications were submitted in Smith v. GB Collects, L.L.C.,

No. 09-5917 (KMW) and Poet v. Security Credit Systems, Inc., et al., No. 10-1068 (KMW),

respectively.  The certifications provide that Mr. Doherty is an experienced litigator in FDCPA class

action matters for 15 years.  As such, Magistrate Judge Williams deemed Mr. Doherty's requested

$350.00/hour rate reasonable.[5]

---

[5] The Court recognizes that for the first time in its reply papers Plaintiff's counsel relies on the National Law Journal
survey to validate their rates.  (Pl.'s Reply Br. at 14).  The same survey was raised in reply in Weed-Schertzer and Judge
Falk was unmoved by K&S's late reliance on this source.  Judge Falk questioned whether this survey actually lent
support to K&S's rates.  Weed-Schertzer, 2011 WL 4436553 at *5, n. 6.  This Court similarly will not rely on the

Based on the above, the Court will adopt Defendant's proposed hourly rates as follows: Craig T. Kimmel, Esq. ($305.00 per hour); Amy L. Bennecoff, Esq. ($215.00 per hour); Tara L. Patterson, Esq. ($215.00 per hour); Christy Sunchych ($95.00 per hour); Katie Hall ($95.00 per hour); and Jason Ryan ($95.00 per hour).  The Court will also reduce the hourly rate of IT personnel Jeff Ehrmann and Jacob Ginsburg from $150.00 per hour and $200.00 per hour, respectively, to $75.00 per hour and $80.00 per hour.[6]  Although these rates may be marginally lower than the rates Defendant provides in its supporting declarations, these rates are consistent with the rates the courts in this District have applied in recent FDCPA cases in which K & S was counsel to Plaintiff.  See Weed-Schertzer, 2011 WL 4436553; Levy, 2011 WL 5117855; Brass v. NCO Fin. Sys., Inc., No. 11-1611, 2011 WL 32862145 (E.D. Pa. July 22, 2011); Overly v. Global Credit & Collection Corp., Inc., No. 10-2392, 2011 WL 2651807 (M.D. Pa. July 6, 2011); Alexander v. NCO Fin. Sys., No. 11-401, 2011 WL 2415156 (E.D. Pa. June 16, 2011).  Because the rates Defendant proposes fall within the same range of reasonableness, the Court adopts them.

B.      Reasonableness of Hours Expended

Defendant objects to a series of time entries predating Plaintiff's rejection of the initial August 24, 2010 offer reflecting intra-office communications and clerical activities.  (Def's. Br. 18-60).  Courts may exclude hours that are not "reasonably expended" due to excessiveness, redundancy or lack of necessity.  Rode, 892 F.2d at 1183.  In response to the specific objections made by a party opposing the award of fees and costs, a court must conduct a "thorough and searching analysis" to identify charges that should be excluded.  Evans v. Port Auth. of N.Y. and N.J., 273 F.3d 346, 362

_____

National Law Journal survey in evaluating the reasonableness of the rates.

[6] Defendant did not include a reduced rate for the IT Personnel because, in its calculations, Defendant removed all IT Personnel entries.  The Court believes such a removal is unwarranted but agrees that the hourly rate is too high.

(3d Cir. 2001).   First, when several attorneys bill a large number of hours for strategy and conferencing, a reduction in the fee request may be appropriate.  Daggett v. Kimmelman, 811 F.2d 793, 797 (3d Cir. 1987).  Second, as the Levy Court noted, "'[a]s a general rule, time that would not be billed to a client cannot be imposed on an adversary . . . . Thus, administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition.'"  Id. at 6 (citing Alexander v. NCO Fin. Sys., No. 11-401, 2011 WL 2415164 (E.D. Pa. June 16, 2011) (citing Public Interest Group v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995)).  Tasks that have been deemed administrative include "opening a file in a database, mailing letters, and copying documents to a CD."  Id.

Here, the Court has undertaken a thorough line-by-line review of the billing records and finds the majority of the time contested is neither purely clerical nor necessarily duplicative and need not be removed from Plaintiff's fee petition on either basis.  For example, time spent creating factual summaries and outlines, drafting emails concerning the status of service and/or waiver and reviewing Defendant's answer are not administrative tasks.  The Court does not doubt, and indeed suspects, that K&S could have used its time more economically but, based on the record before it, the Court cannot exclude these hours from the lodestar calculation.  See Weed-Schertzer, 2011 WL 4436553 at *7 ("While the Court suspects that the case was overstaffed and has concern about the amount of time expended, it will not, without more, exclude hours from the lodestar calculation simply because they reflect attorney-to-attorney communications within the office."); See also  Interfaith Cmty. Org. v. Honeywell Intern., Inc., 426 F.3d 694,711 (3d. Cir 2005) (holding that a court "may not reduce an award *sua sponte*; rather it can only do so in response to specific objections made by the opposing party.").  However, the Court finds the following entry must be removed as it is clerical:  Jason Ryan

– Open file in database (.2 hours); Prepare Amicus Precedent to track case (.1 hours) (3/24/2010).

As such, .3 hours will be reduced from the lodestar calculation.[7]

Finally, K & S requests reimbursement for its time spent preparing the instant fee petition.

Given that the fee petition is not particularly comprehensive and there was no oral argument, the

Court, in its discretion, will allow five hours total for preparation of the fee petition.  Although this

amount is lower than the 8.7 hours Amy L. Bennecoff billed for preparation of the fee petition, the

Court finds the 8.7 hours excessive.  In fact, the memorandum of law submitted in support of the

instant fee petition is shockingly similar to that submitted to Judge Falk in the Weed-Schertzer

matter. *Compare* Pl.'s Br. with Weed-Schertzer, No. 10-6402, Dkt. No. 14.  See Maldonado, 256

F.3d at 187 (allowing reimbursement for fee petition, but reducing the number of hours allowed due

to excessiveness).

---

[7]

  That being said, most of the billing entries Defendant categorizes as "internal communications" and "clerical" should be excluded as they reflect time spent working toward the unsuccessful class certification motion.  The following two examples are illustrative.  First, on June 4, 2010, Christy L. Sunchych entered time as follows "email [class action] complaint to ALB for review (0.1); Review response indicating OK to file (0.1); Prepare civil cover sheet (0.2); Efile complaint (0.1).  (Def's Br. at 20).  Second, on June 2, 2010, Craig Thor Kimmel entered the following time: "email exchange with A. Radbil [counsel at W & M] re: status of revisions and final complaint for filing (0.3)."  Id.
  However, the Court cannot of its own accord remove the billing entries on grounds on which NAFS did not specifically object.  The Third Circuit has made clear that a district court may not *sua sponte* reduce a fee award from the amount requested in the fee petition.  In Bell v. United Princeton Properties, Inc., 884 F.2d 713 (3d Cir. 1989), the Third Circuit held that a "district court in a statutory fee case may not reduce the number of hours claimed by an attorney if the adverse party has declined to 'raise a material fact issue as to the accuracy of representations as to hours spent, or the necessity for their expenditure.'" Id. at 719 (citing Cunningham v. City of McKeesport, 753 F.2d 262, 267 (3d Cir. 1985).  In so holding, the Third Circuit reasoned that: (1) *sua sponte* reduction of a fee request deprives the fee applicant of his or her entitlement to offer evidence in support of the reasonableness of his request and (2) because statutory fee litigation is adversarial litigation, there is no need to allow the district court to reduce a fee award on its own initiative. Id.  See also Interfaith Cmty. Org. v. Honeywell Intern., Inc., 426 F.3d 694, 711 (3d. Cir 2005) ("The court may not reduce an award *sua sponte*; rather, it can only do so in response to specific objections made by the opposing party."); Weed-Schertzer, 2011 WL 4436553 at *7 (refusing to *sua sponte* reduce plaintiff's counsel fees beyond the figure suggested by defendant).  In sum, the Court is confined by the four corners of NAFS opposition and thus cannot remove billing entries prior to the August 24, 2010 rejection date for time spent litigating the ultimately unsuccessful claims.

III.     Lodestar Calculation

Plaintiff's counsel will be billed at the following hourly rates:  Mr. Kimmel ($305.00); Ms.

Bennecoff ($215.00); Ms. Patterson ($215.00); Ms. Sunchych ($95.00 per hour); Ms. Hall ($95.00

per hour); Mr. Ryan ($95.00 per hour); Mr. Ehrmann ($75.00 per hour); and Mr. Ginsburg ($80.00

per hour).  All time billed after the initial offer of judgment will be reduced as described above.  Also

excluded as administrative are 0.3 hours for Mr. Ryan.  The lodestar is:

| Legal Professional | Hours | Hourly Rate | Total |
| --- | --- | --- | --- |
| Craig Kimmel, Esq. | 13.3 | $305.00 | $4056.50 |
| Amy L. Bennecoff, Esq. | 30.3 | $215.00 | $6514.50 |
| Tara Patterson, Esq. | 1.8 | $215.00 | $387.00 |
| Christy Sunchych | 1.6 | $95.00 | $147.00 |
| Katie Hall | 0.2 | $95.00 | $19.00 |
| Jason Ryan | 1.0 | $95.00 | $95.00 |
| Jeff Ehrmann | 1.0 | $75.00 | $75.00 |
| **Total** | **49.2** | | **$11,294.00** |

The Court finds that Plaintiff shall be reimbursed for certain costs incurred litigating this

matter totaling $700.00.[8]   Therefore, the total award is $11,994.00.

---

[8]

 Plaintiff seeks $1,825.09 in costs for "filing the complaint, the fee charged by the clerk of court, as well as, deposition related expenses." (Pl.'s Br. at 4).  In its fee petition in Weed-Schertzer, K & S sought only $350.00 for the fee charged by the clerk of court to file the complaint.  No. 10-6402, Dkt. No. 14 at 4.  Here, the costs Plaintiff seeks are wildly excessive and must be reduced.  However, the Court acknowledges that as opposed to Weed-Schertzer, Plaintiff additionally incurred deposition related expenses.  Accordingly, the Court finds $700.00 to be reasonable.

**III.    CONCLUSION**

In light of the foregoing, the Court GRANTS K & S's Attorney Fee Motion but reduces  the total legal fees sought for work performed by K & S.  The Court DENIES W & M's Attorney Fee Motion.  Accordingly, the Court concludes that Plaintiff's counsel shall be reimbursed by NAFS for reasonable attorney's fees and costs totaling $11,994.00.


/s/ Esther Salas
**United States District Judge**


Dated:  December 29, 2011